CLARK *v.* STATE.

(*Jackson.*    April 26th, 1888.)

1. INDICTMENT.  *Attempt to commit larceny.   Sufficient act.*

   An indictment charging that defendant *opened the cash-drawer* of prose-
   cutor with intent to steal its contents, charges an *act* which consti-
   tutes an *attempt* to commit larceny. .

   Code cited : § 5379 (M. & V.) ; § 4630 (T. & S.).

2. SAME.   *Same.   Description.*

   Description of goods, in an indictment for attempt to commit larceny,
   as "money, personal goods, and chattels" is sufficient.   Less par-
   ticularity of description is required in such case than in indictments
   for larceny.

   Cases cited and approved : Hayes *v.* State, 15 Lea, 64 ; State *v.* Mont-
   gomery, 7 Bax., 160.

3. CRIMINAL LAW.   *Attempt to commit larceny.   What constitutes.*

   One who opens another's cash-drawer, believing that it contains money
   or other valuables, and intending feloniously to steal its contents, is
   guilty of an attempt to commit larceny, although the drawer proved
   to be entirely empty.

   Cases cited and approved : 1 Den. C. C., 187 ; 5 S. & R., 463 ; 5 Cush.,
   365 ; 9 Allen, 274 ; 36 Ind., 280 ; 30 Conn., 500.

   Cited and disapproved : Leigh & C., 471.

FROM FAYETTE.

Appeal in error from Circuit Court of Fayette
County.   T. J. FLIPPIN, J.

C. A. STAINBACK for Clark.

---

---

Attorney-General PICKLE for State.

FOLKES, J.   This is an indictment for attempt
to commit a larceny.   There was a conviction and
sentence of one year in the penitentiary.   Motion
for new trial and in arrest of judgment being
made and overruled, the defendant has appealed in
error.

The indictment charges that the said "Clark,
on the 23d day of November, 1887, in the county
aforesaid, unlawfully and feloniously did enter into
the business house of E. D. Peebles, and did then
and there pull out the cash-drawer—where cash
(money) was usually kept—of said Peebles, and
feloniously attempted to take, steal, and carry away
therefrom the money, personal goods, and chattels
of said Peebles, then and there to be had and
found in said business house, with the intent felo-
niously to convert same to his, the said Clark's,
own use, and to deprive the true owner thereof.
Wherefore, etc.,      *      *      *      by the means
aforesaid, thus feloniously did attempt to commit
a felony—to wit, a larceny—against the peace and
dignity," etc.

The first error assigned is to the action of the
Court in overruling a motion to quash.   This mo-
tion was predicated upon the assumed failure of
the indictment to specify what particular property,
together with its value, was attempted to be stolen,
and that it failed to allege to what extent defend-
ant had gone in the attempt, and finally that the

indictment fails to allege affirmatively that there was money or anything of value in the drawer susceptible of larceny.

The indictment was found under § 5379 (M. & V.) Code, which enacts that "if any person assault another with intent to commit, *or otherwise attempt to commit,* any 'felony, or crime punishable by imprisonment in the penitentiary, where the punishment is not otherwise provided, he shall, on conviction," etc.

It may be said to be well settled that under an indictment for an attempt to commit a larceny, the goods upon which the attempt is made do not have to be described with the same particularity as would be required in an indictment for an accomplished larceny. This must be so in the very nature of things, for otherwise it would often be impossible to frame an indictment, in this class of cases, that would be effectual. To illustrate: A party is charged with breaking into a room or a trunk, with intent to steal, where there are many different articles, all susceptible of larceny, and he is detected and arrested; how can it be alleged or charged, and how proven, what particular articles he intended to take?

All that is required is to charge facts which make "an attempt" in point of law, and so identify the offense as to secure the defendant from a second prosecution therefor. *Hayes* v. *State,* 15 Lea, 64; *State* v. *Montgomery,* 7 Bax., 160.

This indictment, as will be seen, shows that the

attempt was upon money and chattels in the cash-drawer of the prosecutor, and that the attempt had progressed to the point, or extent, of pulling out said drawer, with the felonious intent charged. This is sufficient. See Whart., Cr. L., §§ 190–195.

There was, therefore, no error in the action of the Trial Judge in overruling the motion to quash.

The next error assigned is to the charge of the Court in this: "If his purpose was to steal when he opened the drawer, and his opening it was a part of the act designed by him for getting possession of the prosecutor's money, he would be guilty of an attempt to commit larceny, even though at that particular time there was no money in the cash-drawer."

The proof shows that the defendant was detected by the prosecutor in the act of opening the cash-drawer of the latter's store, having thrown himself across the counter for that purpose, he being alone in the front part of the store at the time—the prosecutor being in the rear waiting on a customer, and being hidden from defendant's view by a screen. When thus detected, and hallooed at by the prosecutor, the defendant hurriedly left the store.

The proof leaves it in doubt whether or not there was any money in this particular drawer at the time the attempt was made. It was early in the morning, and the drawer had been emptied the evening before.

The Court had stated to the jury that the State claimed that there was money in the drawer at the time of the alleged attempt, and that this was denied by the defendant, and that this was one of the questions of fact that they must determine, and that they must determine from the proof what was the purpose and intention of the prisoner in opening the cash-drawer; and if they found that the defendant believed there was money or other valuables in said drawer, and his purpose in opening the same was to steal its contents, then he would be guilty of an attempt to commit larceny, whether there were money or other valuables in the drawer at the time or not.

There is no error in this record. The act averred and proven is sufficient.

The direct question here presented has never been passed upon by this Court, but it is by no means one without authority. It has received much discussion in the text-books, and in the adjudged cases from other courts.

The English cases are conflicting. In *Reg.* v. *Collins*, Leigh & C., 471, it was held there could be no attempt to pick the pocket of a person who had no money at the time in her pocket; while in *Reg.* v. *Goodhall*, 1 Den. C. C., 187, it was held an attempt to produce a miscarriage could be committed . on a woman supposed to be, but not in fact, pregnant.

It appears to us that these cases cannot be reconciled, although Mr. Heard, in his second edition

of Leading Criminal Cases, Vol. II., pp. 482–483, has attempted to do so. We are constrained to agree with Mr. Bishop, that "these differing opinions must have sprung from opposite views in the two benches of Judges." See note 1 to § 741, Bishop's Cr. L., (7th Ed.).

The American, cases seem to be uniform, or at least substantially so, for here the few conflicts are more apparent than real.

In *Commonwealth* v. *Rogers*, 5 S. & R., 463, the Pennsylvania Court held that an indictment for assault with intent to steal from the pocket is good, though it contains no setting out of the anything in the pocket to be stolen. Duncan, J., in delivering the opinion of the Court, said: "The intention of the person was to pick the pocket of whatever he found in it; and although there might be nothing in the pocket, the intention to steal is the same."

So in Massachusetts, under a statute differing in terms but the same in substance as our own herein above quoted, it was held that the indictment need not allege, and the prosecutor need not prove, that there was in the pocket anything which could be the subject of larceny. *Commonwealth* v. *McDonald*, 5 Cush., 365. See also *Commonwealth* v. *Jacobs*, 9 Allen, 274.

To the same effect is *State* v. *Wilson*, 30 Conn., 500.

So in Indiana it has been held that an assault on one with intent to rob him of his money may

be committed, though he has no money in posses-
sion at the time.  *Hamilton* v. *State*, 36 Ind., 280.

If an indictment for an attempt to steal the con-
tents of a trunk or room would not be good, where
it transpired that there was nothing in the trunk
or room, then it would seem to follow that the
indictment, in case where there were goods in the
trunk or room, would have to allege what partic-
ular goods the thief purposed to steal; and if nec-
essary to allege, it is necessary to prove, and how
could this be proven where there was a variety of
different goods, and the thief was arrested before
he had laid hands upon any article?

Again: if a thief is caught with his hand in
your pocket before he can grasp any of its con-
tents, and it is found that the pocket contains
both money and a watch, how can it be proven
that he intended to steal both, and if not both,
which?

And in the case last put, is there any more of
an attempt to steal, the thief being ignorant of
the presence of the watch or money, than there
would be had he, with similar intent and igno-
rance, placed his hand in an empty pocket?

In each case there is the substantive and dis-
tinct offense as prescribed by the statute.  There
is the criminal intent, and an effort made to carry
out the intent to the point of completion, inter-
rupted by some unforeseen impediment or lack out-
side of himself, special to the particular case and
not open to observation, intervening to prevent

success without the abandonment of effort or change of purpose on the part of the accused.

As said by Mr. Bishop: "It being accepted truth that the defendant deserves punishment by reason of his criminal intent, no one can seriously doubt that the protection of the public requires the punishment to be administered, equally whether, in the unseen depths of the pocket, etc., what was supposed to exist was really present or not." 1 Bishop Cr. L., Sec. 741.

The community suffers from the mere alarm of crime:

Again: "Where the thing intended (attempted) is a crime, and what is done is of a sort to create alarm—in other words, excite apprehension that the evil intended will be carried out—the incipient act which the law of attempt takes cognizance of is in reason committed." 1 Bishop, Cr. L., Sec. 742.

The true legal reason for the conclusion reached is that the defendant, with the criminal intent, has performed an act tending to disturb the public repose. *Ib.*, Sec. 744.

Mr. Wharton's views on this, at one time, perplexing question are in accord with Mr. Bishop. See 1 Whart. Cr. L., Secs. 182, 183, 185, 186, and 192 (9th Ed.).

Let the judgment be affirmed.